**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **Debra L. Maynard** | ) | **CASE NO. 1:12 CV 3085** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **The Prudential Insurance** | ) | <u>**Memorandum of Opinion and Order**</u> |
| **Company of America** | ) | |
| | ) | |
| **Defendant.** | ) | |


<u>**Introduction**</u>

This matter is before the Court upon plaintiff's Motion for Judgement on the

Administrative Record. This is an ERISA action. For the following reasons, plaintiff's motion is

DENIED.

<u>**Facts**</u>

Plaintiff, Debra L. Maynard, filed this action in the Lake County Court of Common Pleas

against defendant, The Prudential Insurance Company of America (Prudential). The case was

thereafter removed to this Court because it implicates an Employee Retirement Income Security

Act (ERISA) employee welfare benefit plan.

1

Plaintiff is a fifty-five year old woman. She was employed at H.C. Starck, Inc. (H.C. Starck) as a #2 rolling mill operator.[1] This is a medium occupation, requiring a person to exert force to lift, carry, push, and/or pull objects weighing 20 to 25 bounds occasionally, 10 to 25 pounds frequently or up to 10 pounds constantly, as well as frequent to constant standing. The physical demands also include reaching, handling, near acuity and accommodation, occasional balancing, crouching, fingering, and depth perception. (PRU 265, 192-93).

As an employee benefit, H.C. Starck provides both short-term disability (STD) and long-term disability (LTD) policies through Prudential to its employees. Only the LTD plan (the Plan) is presently at issue.

The Plan provides:[2]

You are disabled when Prudential determines that:

- you are unable to perform the ***material and substantial duties*** of your ***regular occupation*** due to your ***sickness*** or ***injury***; and
- you are under the ***regular care*** of a ***doctor***; and
- you have a 20% or more loss in your ***monthly earnings*** due to that sickness or injury.

...

When we may require you to be examined by doctors, other medical practitioners or vocational experts of our choice, Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

...

You must be continuously disabled throughout your ***elimination period***. Prudential will treat your disability as continuous if your disability stops for 30 consecutive days or less during the elimination period. The days that you are not disabled will not count toward

---

[1]     The administrative record is contained in Docs. 15-3 through 15-8.

[2]     The complete Group Insurance Certificate and Summary Plan Document are found in the administrative record at PRU 001-043. The Group Insurance Contract is found at PRU 044-059.

your elimination period.

Your elimination period is 180 days.
...
For your Long Term Disability claim, we may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor. In some cases, you will be required to give Prudential authorization to obtain additional medical information, and to provide non-medical information (e.g., copies of your IRS federal income tax return, W-2's and 1099's) as part of your proof of claim, or proof of continuing disability. This proof, provided at your expense, must be received within 30 days of a request by us. Prudential will deny your claim or stop sending you payments if the appropriate information is not submitted.

(PRU 013, 015, 029-039) (emphasis original).

### A. Plaintiff's Medical History

On June 6, 2011, plaintiff went to her family physician, Dr. Marc McNaughton, complaining of right leg pain. (PRU 243). Dr. McNaughton's physical exam indicated that inspection of plaintiff's thoracic spine revealed normal findings and normal range of motion, while plaintiff's lumbar spine had a normal range of motion in flexion and extension, and straight leg raises were negative. (PRU 243). Dr. McNaughton ordered x-rays and an MRI of plaintiff's lumbar spine, inspection of which had not revealed any acute abnormality during her visit. Dr. McNaughton's examination disclosed plaintiff had stiffness, limitation of motion, tenderness in the right lumbar area, and tenderness to the right buttocks. (PRU 243). He diagnosed plaintiff with backache and thoracic or lumbosacral neuritis or radiculitis and prescribed her Flexeril, a muscle relaxant. (PRU 244). The following day, plaintiff applied for STD benefits, providing an expected return to work date of June 20, 2011, which were approved by defendant. (PRU 318-320).

Plaintiff's MRI and x-rays were negative for herniated disc, spinal stenosis, and any other significant abnormality. (PRU 247-249). Plaintiff returned to see Dr. McNaughton on June 16,

3

2011, indicating that her pain was slightly better but she still had pain localized to her center low back. Plaintiff's thoracic spine was normal when examined and it was non-tender to palpitation. Inspection of the lumber spine revealed no sensitivity to palpitation, and normal range of motion in flexion and extension. Plaintiff had acute focal pain in the sacroiliac joint bilaterally. Dr. McNaughton diagnosed plaintiff with unspecified backache and referred plaintiff to Dr. Emad Mikhail for evaluation of her back pain and range of motion exercises. (PRU 180-181).

Plaintiff saw Dr. Mikhail the next day. Dr. Mikhail noted plaintiff had lumbrosacral spine tenderness and that plaintiff was positive for Ganselen Sign and Patrick's Sign on her right side. (PRU 236-240). Dr. Mikhail performed a right sacroiliac joint steroid injection during this visit. (PRU 234). Dr. Mikhail also performed a lumbar epidermal steroid injection on plaintiff on June 24, 2011. An updated Attending Physician's Statement completed by Dr. McNaughton on June 24, 2013 provided a new return to work day for plaintiff of July 25, 2013.

Plaintiff returned to see Dr. Mikhail on July 22, 2011, reporting that she had 50% relief of pain since her last injection. Dr. Mikhail performed another epidermal steroid injection during this visit. Dr. Mikhail found limited range of motion and positive loading test on the right, and he diagnosed plaintiff with displacement of lumbar intervertebral disc without myelopathy. (PRU 184).  Dr. McNaughton completed plaintiff's disability form on July 28, 2013, indicating plaintiff "may need to be out an additional 5 weeks" and provided a return to work date of August 29, 2011.  (PRU 226). Defendant extended plaintiff's STD benefits.

Plaintiff received a lumbar epidermal steroid injection from Dr. Mikhail on September 2, 2011. Dr. Mikhail's exam notes indicate plaintiff still had tenderness and was positive for facet loading. Dr. Mikhail diagnosed plaintiff with radicular syndrome of the lower limbs and low

4

back pain and he referred plaintiff for a neurological consult. (PRU 211). Plaintiff received a final lumbar epidermal steroid injection on September 16, 2011. On September 22, 2011, plaintiff indicated to defendant that she did not want a neurological consult as she "was seeing relief and [she] didn't want surgery." (PRU 327).

On September 28, 2011, plaintiff completed an Activities of Daily Living Questionnaire for defendant. (PRU 205). Plaintiff reported that she could drive 10 miles with pain, and travel 50 miles as a passenger. Plaintiff reported she was able to spend one hour daily doing household activities. She reported that she was unable to mow the entire lawn without many breaks, she could not walk at a normal speed to the mailbox, she could not dig in her garden, and she needed her husband's assistance to carry heavy items when shopping. Plaintiff reported she walked 20 minutes daily for exercise. (PRU 199-205).

On October 18, 2011, Ralph Gilpatrick, Vocational Rehabilitation Specialist for defendant, assessed plaintiff's job as a "medium occupation." Based on this assessment and plaintiff's slow recovery, defendant extended plaintiff's STD benefits through December 12, 2011, the maximum duration of STD benefits under the H.C. Starck's plan.

Plaintiff saw Dr. Mikhail again on October 21, 2011, reporting her right leg pain was at least 50% better since her last injection. (PRU 187). Physical examination of plaintiff revealed that her lumbar spine continued to be tender, and she was positive for facet loading on both her right and left sides. During this visit, Dr. Mikhail recommended that plaintiff undertake physical therapy and proscribed her Ultram, a pain reliever. (PRU 189).

Plaintiff began physical therapy with Dr. Justin Wirick on October 24, 2011, and received treatments approximately twice a week for the next six weeks. (PRU 163-70). On

5

November 1, 2011, Dr. Wirick completed a capacity questionnaire for plaintiff at defendant's request. In this questionnaire, Dr. Wirick indicated plaintiff could work intermittently to a maximum of one to two hours per day, at 15-30 minute intervals at a time, and that plaintiff could sit one to two hours a day, at 30-45 minute intervals. (PRU 173-74). Plaintiff was discharged from physical therapy December 5, 2011, pending consultation with a neurosurgeon. (PRU 164).  Dr. Wirick's discharge notes indicate that plaintiff's pain was more manageable, her lumbar range of motion had improved, and her transference capacity had also improved. However, Dr. Wirick noted that plaintiff had not met several functional goals, including that she had limited weight-bearing and seated endurance. (PRU 163).

On December 9, 2011, Kathleen Pattis, Physical Therapist for defendant, conducted a capacity/clinical review of plaintiff's file to assess whether she had restrictions and limitations which prevented her from working. (PRU 330).

On December 14, 2011, defendant denied plaintiff's claim for LTD benefits. In the letter, defendant indicated that it had received medical records from Drs. Wirick, McNaughton, and Mikhail. Defendant stated that it had communicated with plaintiff by phone on December 14, 2011, and plaintiff had related that Dr. Borsellino, the neurosurgeon with whom she had consulted on December 8, 2011, had advised surgical intervention was not warranted. (PRU 331). Defendant explained that a member of its clinical staff reviewed the medial information obtained.

> We have concluded that based on the objective documentation, you had an acute muscular strain, and it was medically reasonable to restrict you to lifting approximately 10 to 15 pounds for a 4 to 6 week period for treatment of her acute condition immediately after your disability date. Therefore by July 19, 2011 you would have had the ability to return back to your previous level of functioning. Beyond this initial period there is no medical basis to restrict your activities. You had normal diagnostic testing and normal

6

physical examinations. You are limited by your subjective reports of pain that have not resolved despite medications, injections and physical therapy. Currently you report being limited by your pain to only 15 to 20 minute periods of sitting, standing and walking.

Therefore beyond the initial 4 to 6 weeks from your disability date, you were back to your
baseline functioning. The medical information obtained supports you do not have restrictions and limitations beyond July 19, 2011[.]

(PRU 279).

Concluding that plaintiff had not been disabled for the alimentation period, defendant

disallowed her LTD claim.

### B. Plaintiff's First Appeal

Plaintiff appealed the denial on February 17, 2012. In support of her appeal, plaintiff

submitted a letter from Dr. McNaughton, requesting that defendant reconsider plaintiff's appeal

as he had witnessed a "significant change in [plaintiff's] lifestyle due to this back pain." (PRU

114). Plaintiff also included a letter from Dr. Wirick opining that plaintiff was not capable of

returning to a full-time position, and was fit only for light duty work. Dr. Wirick's letter also

noted: "I am aware that Ms. Maynard underwent a lumbar MRI that was noted for an Ll-L2

annular bulge; however there was no definitive evidence of neural impingement to explain the

lower extremity symptom referral. I have suggested to the patient that she contact her PCP to

consider obtaining an NCV/EMG of her lower extremities, as I cannot specifically identify the

source of her radicular symptoms." (PRU 115). Dr. Wirick also completed a functional capacity

questionnaire, indicating plaintiff only had the capacity to work two to four hours a day, three to

five days a week. (PRU 116-17).

Defendant requested an independent file review of plaintiff's claim. On March 12, 2013,

Dr. Victor Isaac, board certified in physical medicine and rehabilitation and pain medicine,

reviewed her file. Dr. Isaac's report discusses plaintiff's medical history in detail. Having examined plaintiff's medical records, Dr. Isaac noted that the x-ray and MRI of plaintiff's lumbar spine were normal and that plaintiff's neurological examinations were also negative.  Dr. Isaac also noted that there was no nerve conduction study to assess plaintiff's radiculpathy. Dr. Isaac opined that plaintiff had no medically necessary restrictions from sitting, standing, walking, lifting, or working on a full-time basis. Dr. Isaac concluded that plaintiff's self-reported limitations were unsupported by the documentation provided by her treating physicians and that there was no evidence of medication interfering with her work.

On March 29, 2012, Meredith Formon, Appeals Specialist for defendant, denied plaintiff's first appeal. (PRU 273; 332-333). The administrative record does not contain defendant's March 29, 2012 denial letter.

### C. Plaintiff's Second Appeal

On July 3, 2012, plaintiff submitted a second appeal to defendant. In support, plaintiff submitted a conduction test (EMG) done by Dr. Gary Kutsikovich, a neurologist, on April 19, 2012. Dr. Kutsikovich's impression was that plaintiff had right S1 radiculopathy. (PRU 088-089). Plaintiff also submitted a copy of a letter from Dr. McNaughton dated June 15, 2012, noting that the EMG findings "were consistent for a radiculpathy to her right side." Dr. McNaughton opined that plaintiff was suffering from a chronic condition, that conservative therapy had been unsuccessful, and that plaintiff was not a candidate for surgery. (PRU 075). Plaintiff also provided a letter from Dr. Mikhail opining that signs of right S1 radiculpathy on plaintiff's EMG indicated she did not respond to the steroid injections. Dr. Mikhail also noted that plaintiff was considering a spinal cord simulator trial, pending psychological clearance.

8

(PRU 090).

Defendant requested a second independent review of plaintiff's file. On August 2, 2012, Dr. Ephraim Brenman, board certified in physical medicine and rehabilitation and pain medicine, reviewed plaintiff's file. He reviewed plaintiff's medical records, as well as the EMG report and the letters from Drs. McNaughton and Mikhail. Dr. Brenman concluded that the documentation he reviewed did not support any medically necessary restrictions for plaintiff as of December 4, 2011. He opined that plaintiff's EMG was not consistent with S1 radiculpathy according to AANM guidelines, and also indicated that neither the imaging studies nor the functional examinations of plaintiff correlated with a finding of radiculpathy.

On August 3, 2012, defendant responded to plaintiff's second appeal by letter. After stating a detailed summary of plaintiff's medical history and her first appeal, defendant addressed plaintiff's second appeal.

> In her appeal, you indicate that our internal reviewers did not agree with the denial and that the Case Report by Dr. Victor Isaac rests his opinion on the lack of objective evidence of a medical condition requiring restrictions. You state that on April 19, 2012, Dr. Gary Kutsikovich conducted nerve conduction testing for Ms. Maynard's lower extremities. The EMG documented that there was increased insertional activity in the right lower lumbar paraspinal muscles and decreased recruitment in the right gastrocnemius and right gluteus muscle. Dr. Kutsikovich concludes from the EMG results that there is a right S1 radiculopathy. A copy of the report is enclosed. Also enclosed is Dr. Marc McNaughton's letter dated June 5, 2012 which notes that the EMG test results confirm his clinical findings of radiculopathy on the right side. He recites that conservative therapy has failed and that Ms. Maynard is not a surgical candidate at this time. The condition is now chronic. You also enclosed a letter from Emad Mikhail dated June 27, 2012. You state that the sum of these medical reports is that Ms. Maynard suffers from chronic right side radiculopathy confirmed both clinically and by objective test results of the EMG. Now the motor and sensory deficit has been established by the EMG. You state that based on the EMG test, Dr. Isaac's conclusions now fail based on the objective evidence.

(PRU 263).

9

Defendant explained that it had plaintiff's file evaluated by an independent physician (Dr. Brenman) who had concluded that the plaintiff did not have any medically necessary restrictions or limitations as of December 4, 2011 forward. (PRU 264). Defendant recounted Dr. Brenman's opinion in detail and then noted plaintiff's job description and its requirements. Defendant then concluded:

> In summary, based on information in file, there is no evidence of functional impairment or the need for any restrictions and/or limitations. While Ms. Maynard has subjective complaints of back pain, there is no documentation of any findings on functional examination, diagnostic testing or imaging, or electrodiagnostic testing that would support restrictions or limitations. As a result, we have determined that she would be capable of performing the material and substantial duties of her regular occupation and we have upheld the decision to deny LTD benefits.

(PRU 265).

Plaintiff thereafter filed this suit. This action is brought pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132. The Complaint sets forth a single cause of action and alleges that defendant's denial of long term disability benefits was wrongful, arbitrary and capricious, a breach of contract, and a breach of fiduciary duty owed to plaintiff.

This matter is now before the Court on plaintiff's Motion for Judgment on the Administration Record. Defendant opposes the Motion.

**<u>Standard of Review</u>**

The parties disagree about the standard of review in this case. The Court must resolve whether defendant's decision to deny plaintiff's LTD benefits is to be scrutinized *de novo* or under the deferential "arbitrary and capricious" standard of review. The Supreme Court has held that a denial of benefits must be reviewed *de novo* unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms

10

of the plan. *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115 (1989). "[W]here an ERISA

plan expressly affords discretion to trustees to make benefit determinations, a court reviewing

the plan administrator's actions should apply the arbitrary and capricious standard of review."

*Williams v. Int'l Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000).

Plaintiff contends that *de novo* is the proper standard. She argues that the LTD Group

Insurance Certificate (Certificate) does not reserve discretion to defendant to determine

eligibility for benefits. Rather, such a grant of authority is only contained within the Summary

Plan Description (Summary). The Summary declares that it is not part of the Certificate and is

included in the employees' booklet-certificate at H.C. Strack's request. As it is not part of the

Certificate, the Summary is also not part of the plan documents and thus cannot confer

discretionary authority on defendant.

Defendant contends that the plan contains a grant of discretionary authority and its

decision should be given arbitrary and capricious review. Defendant argues that the Summary is

part of the plan documents, as there is no requirement that the terms of a plan be contained in a

single document.  The Summary clearly communicates that defendant had discretion, by stating:

"The Prudential Insurance Company of America as Claims Administrator has the sole discretion

to interpret the terms of the Group Contract, to make factual findings, and to determine

eligibility for benefits." (PRU 038). The Summary states that it is "intended to comply with the

disclosure requirements of the regulations issued by the U.S. Department of Labor under

[ERISA]." Finally, defendant argues that the Certificate, the portion of the booklet-certificate

plaintiff acknowledges is a plan document, itself repeatedly informs participants that defendant

has the authority to determine eligibility for benefits.

11

Arbitrary and capricious is the applicable standard of review. The Certificate, which both plaintiff and defendant agree to be a plan document, clearly contains a grant of discretionary authority to the defendant. For example, the Certificate states, "You are disabled when **Prudential determines** that: you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury." (PRU 013) (emphasis added). The Certificate also details that defendant "may request that you send proof of continuing disability, **satisfactory to Prudential**, indicating that you are under the regular care of a doctor." (PRU 029) (emphasis added). Under well-established Sixth Circuit precedent, these words are sufficient to afford defendant's decision arbitrary and capricious review. *See, e.g., Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 983–84 (6th Cir. 1991) (finding arbitrary and capricious standard applied where disability determined "on the basis of medical evidence satisfactory to the Insurance Company").

The Court also finds that the Summary is a plan document, and its clear grant of discretionary authority to defendant likewise warrants arbitrary and capricious review. "[T]here is no requirement ... that the terms of an ERISA plan be contained in [a] single document. Nor does the requirement of 29 U.S.C. § 1102(a)(1), that the terms of an ERISA plan be contained in a written instrument require that it be a single document." *Rinard v. Eastern Co.,* 978 F.2d 265, 268 n. 2 (6th Cir. 1992). Often it is difficult to discern whether a given document is one that constitutes the plan. "This kind of confusion is all too common in ERISA land; often the terms of an ERISA plan must be inferred from a series of documents none clearly labeled as 'the plan.'" *Health Cost Controls of Illinois, Inc. v. Washington,* 187 F.3d 703, 712 (7th Cir. 1999). Here, ERISA requires the Summary be provided to covered individuals. Consequently, the Court finds

12

that it is a plan document. The Summary's clear grant of discretion to defendant likewise requires that this Court review defendant's determination to deny plaintiff's LTD benefits under the arbitrary and capricious standard. *Lee v. MBNA Long Term Disability & Benefit Plan*, 136 F. App'x 734, 735 (6th Cir. 2005) ("The governing plan documents include the summary plan description ("SPD") and the insurance policy between MBNA and Security Life."); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) ("The district court rejected this theory, holding that the plan documents, including the summary plan descriptions, effectively reserved a right on GM's part to amend or terminate the plan. The court's holding, in our view, was manifestly correct [.]").

Consequently, the Court will scrutinize defendant's denial of plaintiff's LTD benefits under the arbitrary and capricious standard. Plaintiff bears the burden of proving the denial of benefits was arbitrary and capricious. *Farhner v. United Transp. Union Discipline Income Prot. Prog.,* 645 F.3d 338, 343 (6th Cir. 2011).

The Sixth Circuit has stated:

> [T]he arbitrary and capricious standard is the least demanding form of judicial review of an administrative action. When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was "rational in light of the plan's provisions." Stated differently, "when it is possible to offer a reasoned explanation, based on the evidence for a particular outcome, that outcome is not arbitrary or capricious."

*Id.* at 712 (citations omitted).

The administrator's decision need not be the only appropriate choice or even the best one. *Miller v. Metro Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991). Although deferential, the arbitrary and capricious standard is "not no review" and "[i]t is not [ ] without some teeth." *McDonald v. Western-Southern Life Ins. Co.,* 347 F.3d 161, 172 (6th Cir. 2003) (citations and

13

quotations omitted). Rather, this standard requires the Court to review "the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald v. Western-Southern Life Ins. Co.,* 347 F.3d 161, 172 (6th Cir. 2003). The Court must determine whether the administrator made a deliberate, principled, and reasoned decision. *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 618 (6th Cir. 2006).

### Discussion

Plaintiff's objections to defendant's decision are scant and difficult to discern.[3] "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (internal citation omitted). Nevertheless, the Court will endeavor to identify and respond to them.

### A. Conflict of Interest

Plaintiff offers that defendant is operating under a conflict of interest because of its dual role as administrator of the Plan (giving it discretionary authority to determine the validity of a claim) and insurer of the Plan (obligating it to pay those claims). Defendant argues that mere allegations of conflict of interest are insufficient to alter the Court's standard of review. Defendant notes that plaintiff has not presented any evidence that its actions were motivated by any conflict of interest.

---

[3]     Plaintiff does put forth some more developed arguments in her Reply. Even were the Court to agree with them, it is well-settled in the Sixth Circuit that issues raised for the first time in reply papers are not a proper basis for granting relief. *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 553 (6th Cir. 2008).

14

Where a plan authorizes an administrator "both to decide whether an employee is eligible for benefits and to pay those benefits," it creates "an apparent conflict of interest." *Glenn v. Metro Life. Ins. Co.*, 461 F.3d 660 (6th Cir. 2006). However, Sixth Circuit precedent requires a plaintiff not only to show the purported existence of a conflict of interest, but also to provide "significant evidence" that the conflict actually affected or motivated the decision at issue. *See Peruzzi v. Summa Med. Plan*, 137 F.3d 431 (6th Cir. 1998). Where the insurer has taken steps to reduce bias, a conflict should not be a substantial factor and may perhaps vanish entirely. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116-17 (2008).

In this case, neither party has introduced any evidence about the administrator's conflict of interest.  Raising the spectre of a conflict of interest is insufficient for the Court to find the administrator's decision to be arbitrary and capricious. Absent evidence that the administrator's decision was motivated by its dual role, the Court will give only slight weight to the conflict of interest when reviewing the administrator's decision. *Curry v. Eaton Corp.*, 400 F. App'x 51, 58-59 (6th Cir. 2010) (applying "ordinary" arbitrary and capricious review where no evidence was provided that the administrator's decision was motivated by its alleged conflict of interest); *Hayden v. Martin Marietta Materials, Inc. Flexible Benefits Program*, 2012 WL 3109496 (W.D. Ky. July 31, 2012) (giving only slight weight to a structural conflict of interest where neither party had presented evidence).

**B. File Review**

Plaintiff states in her motion, "Every doctor who has physically examined plaintiff has found her to be disabled. . . . The paper reviews of Prudential's doctors discount the physical findings and only want to rely upon the absence of finding on the x-rays and MRI. They ignore

15

the EMG findings correlated with the clinical notes of Drs. Mikhail and Wirick." (Doc. 14 p. 11).

Defendant responds to plaintiff's statements by arguing that its decision to deny her LTD benefits was reasonable. Defendant notes that two board certified physicians undertook reviews of plaintiff's medical records. It notes that while the physicians agreed that plaintiff had some physical limitations for a brief period of time due to muscle strain, they found that at the time plaintiff was eligible to receive LTD benefits, she did not have any restrictions or limitations. Defendant offers that Dr. Wirick, plaintiff's physician, noted that he could not identify the source of plaintiff's symptoms, that he had discharged plaintiff from physical therapy, and that he did not provide any new medical information or explain the restrictions he had indicated on the functional capacity questionnaire. Defendant concludes that plaintiff has not presented any argument or evidence suggesting defendant was unreasonable in its reliance on the analysis of the independent physicians in denying plaintiff's claim.

Plaintiff appears to advance three grounds on which defendant's decision could be arbitrary and capricious. First, that a file review, rather than a physical examination of plaintiff, was objectionable. Second, that the file reviewers ignored plaintiff's EMG, rendering their opinions and defendant's reliance on them arbitrary and capricious. Third, that the file reviewer's conclusions were arbitrary and capricious because they were based on the lack of objective evidence of disability. The Court will address each in turn.

A file review of a benefits decision is not inherently objectionable if performed by a qualified medical professional. *Calvert v. Firstar Fin., Inc.,* 409 F.3d 286, 296 (6th Cir. 2005).

Here, Dr. Isaac and Dr. Brenman are both board certified physicians,[4] so their review is not inherently objectionable and defendant's decision to rely on it was not, in and of itself, arbitrary and capricious.

Plaintiff has also objected, without citation to any authority in her motion, that "[t]hey ignore the EMG findings correlated with the clinical notes of Drs. Mikhail and Wirick." (Doc. 14 p. 11). The Court takes this to be an argument by plaintiff that when a file reviewer ignores a medical record, the opinion is rendered arbitrary and capricious. The Court agrees that when a plan reserves the right to conduct a physical examination and does not, in some cases, it may, "raise questions about the thoroughness and accuracy of the benefits determination" and render it arbitrary and capricious. *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 263 (6th Cir. 2006). Furthermore, an opinion can be arbitrary and capricious where the file reviewer ignores medical data and makes credibility determinations concerning the plaintiff's subjective complaints of pain without having conducted a physical examination. *Calvert v. Finstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005).

Here, defendant's plan did reserve the right to conduct a physical examination of plaintiff. (PRU 013). Although plaintiff states that both file reviewers ignored the EMG, she is incorrect. Dr. Isaac could not ignore the EMG findings as they did not exist when he did his file review.[5] Dr. Brenman does address the EMG findings in his file review, stating: "EMG was not

---

[4]     Dr. Isaac is board certified in physical medicine and rehabilitation and in pain medicine. Dr. Brenman is board certified in physical medicine and rehabilitation and in pain medicine. He is a Diplomate, American Board of Electrodiagnostic Medicine and a Diplomate, National Board of Osteopathic Examiners.

[5]     Dr. Isaac's review was completed March 12, 2012. The EMG was done April 19, 2012.

consistent with S1 radiculopathy according to AANM Guidelines. There was no spontaneous activity found at one appendicular muscle or lumbar paraspinal or two appendicular muscles innervated by the same nerve root that showed spontaneous activity. Basically, the findings were basically increased amplitude and decreased recruitment that could show actually an old injury." (PRU 083). Therefore, the Court finds that his review cannot be arbitrary and capricious on this ground.

Plaintiff states that her "doctors have presented objective evidence of her disabling condition, being S1 radiculpathy, which meets the policy definition of disability." (Doc. 14 p. 11).  Plaintiff appears to object that Dr. Isaac and Dr. Brenman's opinions, which focused on the negative findings in plaintiff's x-ray, MRI, and EMG, were arbitrary and capricious for their reliance on the lack of objective information in determining plaintiff was not disabled. The Court also construes this as an argument that defendant was arbitrary and capacious for relying on the opinion of the file reviewers rather than plaintiff's treating physicians.

The Plan requires "proof" of disability. (PRU 029). The concept of proof connotes objectivity. *Accord Maniatty v. Unumprovident Corp.*, 218 F. Supp. 2d 500, 504-05 (S.D.N.Y. 2002), *aff'd* 62 F. App'x 413 (2d Cir. 2003). Drs. Isaac and Brenman appear to have examined all of plaintiff's medical records during their review. Both doctors conclude that there was a lack of objective evidence supporting plaintiff's claim for disability. The Court cannot say they acted arbitrarily and capriciously in finding that plaintiff was not disabled based on their professional opinions that there was a lack of objective evidence to support that conclusion.

Likewise, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan

18

administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). This Court cannot require an administrator to credit the opinion of the insured's treating physicians over those of the independent file reviewers without some showing of fault with the file reviews. Defendant explained that its denial of LTD benefits was based on a lack of objective documentation, which is sufficient in the Sixth Circuit to uphold the administrator's decision. *Curry v. Eaton Corp.,* 400 F. App'x 51, 60 (6th Cir. 2010) ("Eaton is not entitled to simply ignore the opinions provided by Curry's treating physicians, but it can resolve conflicts between those opinions and the opinions of its own file reviewers if it provides reasons—including a lack of objective evidence—for adopting the alternative opinions that are consistent with its responsibility to provide a full and fair review of Curry's claim."). The Court therefore finds that defendant's reliance on the file reviews of Dr. Isaac and Dr. Brenman was not arbitrary and capricious.

### C. Fitness for Work Exam

In her motion, plaintiff also states that "[u]nder these circumstances, one has to wonder why Prudential never had a physical examination of Plaintiff conducted. The employer did so, and the employer's doctor found her to be unfit for work." (Doc. 14 p.11).[6] The Court takes this to be an argument that, in light of the "fitness for work exam," the Court should find defendant's

---

[6]      In her Reply, plaintiff acknowledges that this exam was completed after the administrator had made its decision on plaintiff's second appeal. However, plaintiff argues, without any supporting authority, that defendant chose to exclude other items submitted after the administrator's decision had been made. Thus, plaintiff contends, the inclusion of this document was a conscious decision and the Court should consider it. The caselaw, however, does not support this position.

decision to be arbitrary and capricious. Defendant construes this statement as the Court did. It responds by noting that this fitness for work exam was submitted after it had already denied plaintiff's second appeal. (Doc. 15 p. 15-16).

A court may only review a decision to deny disability benefits based on the information that was available to the administrator at the time of the decision. *Evans v. Metro Life Ins. Co.*, 190 Fed. Appx. 429, 434 (6th Cir. 2006) ("[C]ourts must consider only facts known to the plan administrator at the time of its decision."); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 614-15 (6th Cir. 1998) (finding the argument that the district court should have considered an affidavit submitted after the administrator had made its decision to be "meritless"). Defendant denied plaintiff's second appeal for LTD benefits on August 3, 2012. (PRU 260-66). The "fitness for work" exam plaintiff seeks to have considered is dated September 12, 2012. (PRU 063). As this evidence was not before the administrator, the Court may not consider whether defendant's decision was arbitrary and capricious in light of it.

<u>Conclusion</u>

The Court does not find defendant's denial of LTD benefits to be arbitrary and capricious. Defendant's reliance on the conclusions of the medical reviewers, instead of the opinions of plaintiff's treating physicians, appears to the Court to be "a deliberate, principled, and reasoned decision." *Elliot v. Metro Life. Ins. Co.*, 473 F.3d 613, 618 (6th Cir. 2006). For the reasons set forth above, plaintiff's Motion for Judgment on the Administrative Record is DENIED, and judgement is entered in favor of defendant.

IT IS SO ORDERED.


 /s/ Patricia A.Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 11/7/13